In re Doreatha KNIGHT, Debtor.

**RICH MAR APARTMENTS, Plaintiff,**

v.

**Doreatha KNIGHT, Debtor,**

and

**Stephen Kimatian, Trustee, Defendants.**

Bankruptcy No. 80–2–1230–L.
Adversary No. 80–0563.

United States Bankruptcy Court,
D. Maryland.

Feb. 10, 1981.

Howard Cassin, Bass & Denick, P.A., Baltimore, Md., for plaintiff.

Jack I. Hyatt, Baltimore, Md., for defendant-debtor.

## MEMORANDUM OPINION AND ORDER

HARVEY M. LEBOWITZ, Bankruptcy Judge.

On October 29, 1980, the Plaintiff, Rich Mar Apartments, filed a "Complaint to Terminate or Modify Automatic Stay" seeking the ejection of the Defendant Debtor from a residential apartment for non-payment of post-petition rent due under the terms of a lease entered into prior to the filing of the bankruptcy petition. The Debtor filed an Answer on November 14, 1980, and appeared along with counsel at a hearing held on November 26, 1980. Although the Court issued its ruling from the bench at the conclusion of the hearing, counsel for the Plaintiff requested that this Court file a written opinion in order to clarify any conflict between the jurisdiction of this Court under the Bankruptcy Reform Act of 1978, Pub.L.No.95–598, 92 Stat. 2683 (1978) (codified at 11 U.S.C. §§ 101–1330 (Supp. III 1979)) (the "Code"), and the exclusive original civil jurisdiction of the District Courts

of Maryland over actions involving a landlord and tenant under the Maryland Courts and Judicial Proceedings Code Annotated § 4–401 (1980). The Court agrees with counsel's suggestion that this is an area in which clarification is necessary and has therefore filed this opinion.

Although evidence was offered at trial by both parties, the pertinent facts either are not in dispute, or were stipulated by counsel. Doreatha Knight, the Debtor, entered into possession of premises known as 30–H Richmar Road, Owings Mills, Maryland, on April 25, 1980, under the terms of a lease executed a day earlier with the landlord, Rich Mar Apartments. Despite the provision of the lease that the annual rental was to be paid in monthly installments of $242.00 beginning on May 1, 1980, no rent was paid by the Debtor with the exception of a single payment in September 1980. The Debtor's petition for relief under Chapter 7 of Title 11 was filed on July 15, 1980, and the Defendant Stephen H. Kimatian was duly appointed Interim Trustee by order of this Court on July 25, 1980. On September 15, 1980, the landlord filed a complaint in state court seeking relief for the non-payment of rent. Thereafter, the Debtor filed a "Petition For Stay And/Or Dismissal" in the state court purporting to stay those proceedings. The landlord then filed a "Complaint To Terminate Or Modify Automatic Stay" in this Court requesting this Court to terminate the stay imposed by § 362(a) of the Code, or in the alternative to order the Interim Trustee to adopt the lease. At trial, counsel stipulated that the Debtor has no interest in the premises other than that represented by the lease. The Interim Trustee was duly served, but has not answered the complaint and did not appear at trial.

To the extent that Rich Mar's claim is based upon the Debtor's pre-petition default in rent, its status is no different from that of other scheduled creditors whose efforts to collect debts are stayed by § 362(a) of the Code.[1] Because the claim is one that "could have been commenced [against the Debtor] before the commencement of the case under this Title," § 362(a)(1) stays any action against the Debtor to recover on the debt unless a Bankruptcy Court has granted relief from the stay under § 362(d).[2] Inasmuch as Rich Mar apparently took the position at trial

---

1. Section 362(a) provides as follows:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C. § 362(a) (Supp. III 1979).

2. The Code sets up the criteria for relief from stay as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (Supp. III 1979).

that it was proceeding solely on the basis of post-petition default in rent, the Court is not called upon to consider whether § 362(d) relief should be granted with respect to the pre-petition default. Furthermore, relief from stay for the purpose of ejectment or collection of the post-petition default is inappropriate because under the circumstances of this case there is no stay imposed by § 362(a). With the exception of § 362(a)(3) and § 362(a)(4), § 362(a) contemplates the staying of acts against the Debtor or his property that are based upon claims arising prior to the filing of the bankruptcy petition. *See* Collier on Bankruptcy ¶ 362.04, at 362–27 (15th ed. 1980). Clearly, a claim based upon post-petition default is not within the scope of such a stay because such a claim could not have been made before the bankruptcy. Thus, no relief is required under § 362(d) in order for a creditor to take action on claims arising post-petition which are outside the scope of the stay imposed by § 362(a)(3) and § 362(a)(4).

■ The stay of acts against property of the estate provided by § 362(a)(3) and

§ 362(a)(4) is likewise inapplicable in this case. It is undoubtedly true that the Debtor's interest in the leasehold at the time of the filing of the bankruptcy petition was an equitable interest that became property of the estate by virtue of § 541(a)(1) of the Code.[3] Such an interest, however, would also be an unexpired lease subject to the provisions of § 365. Section 365 provides that the trustee may assume or reject any unexpired lease of the Debtor.[4] In a Chapter 7 case, § 365(d)(1) provides that failure of the trustee to reject or assume within sixty days is deemed to be a rejection.[5] Inasmuch as the hearing in this case was held more than four months after the order for relief was entered, and the trustee has not acted affirmatively to assume or reject, the Court must deem the lease to have been rejected by the trustee.

Section 365(g)(1) provides that the trustee's rejection is to be treated as a breach of the lease that took place immediately before the filing of the bankruptcy petition.[6] Despite this clear expression of Con-

---

3. Section 541(a)(1) provides as follows:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1) (Supp. III 1979). *See, In re Ford,* 3 B.R. 559, 569, 1 C.B.C.2d 840, 850–51 (B.Ct.D.Md.1980) ("the scope of § 541(a) is broad and all-embracing"), *aff'd,* 638 F.2d 14 (4th Cir. 1981).

4. The pertinent part of § 365 provides as follows:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a) (Supp. III 1979).

5. Section 365(d)(1) provides as follows:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for

cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1) (Supp. III 1979). Because under § 365(d)(2) the power of a Bankruptcy Court to order a trustee to assume at the request of a party is limited to cases under Chapters 9, 11, and 13, no relief may be granted on Rich Mar's request that such an order be entered in this Chapter 7 case.

6. Section 365(g)(1) provides as follows:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
> (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition; or

11 U.S.C. § 365(g)(1) (Supp. III 1979). *Collier* states that the "purpose of this [subsection] is to make clear that, under the doctrine of relation back, the other party to a contract which has not been assumed is simply a general unsecured creditor." Collier on Bankruptcy ¶ 365.-08, at 365–41 (15th ed. 1980). Although this may be true with respect to contracts, both *Collier* and the legislative history are silent with respect to a debtor-tenant's rights when

gressional intent, it is evident that § 365 was not drafted with residential leases in mind. In the context of this opinion a residential lease is intended to encompass the conventional consumer arrangement under which the Debtor takes possession of premises as the tenant for the purpose of residing in those premises on a continuous basis, rather than for the leasing of premises for an investment or business purpose. The provisions of § 365 seem solely to contemplate contracts and leases arising in a commercial context or possibly ones which could produce income for the estate. *See, e. g.*, 11 U.S.C. § 365(b)(3) (Supp. III 1979) (providing for certain treatment for shopping center leases). That which may seem commercially reasonable, however, has a devastating impact upon a consumer debtor residing in an apartment under a lease. The trustee's rejection, be it either affirmative or presumptive, would place a tenant in breach under § 365(g)(1) even if there has been no other default under the terms of the lease.

Moreover, the trustee is not likely to assume a residential lease because the estate would not benefit from an obligation to pay the Debtor's post-petition rent. Thus, a literal reading of § 365 of the Code would adopt a policy that allows a landlord to evict tenants regardless of default solely on the basis that the tenant has sought relief under the Code. Such an inequitable result could not have been intended.

This Court therefore holds that the trustee's rejection of a residential lease constitutes an abandonment of the estate's interest in the lease to the Debtor. As a result, the lease is no longer property of the estate, and the stay imposed by § 362(a)(3) and § 362(a)(4) is no longer applicable. Thus, following the abandonment, a residential landlord may enforce his rights under the lease with respect to post-petition defaults without the necessity of seeking relief from stay in a Bankruptcy Court.

The rights of the landlord to proceed in state court without relief from the § 362(a) stay, however, are limited in three respects. First, the landlord's action must be one based wholly upon the Debtor's default under a residential lease in rent payments due after the filing of a bankruptcy petition. Second, during the period after the filing of the bankruptcy petition but prior to the trustee's rejection, the stay imposed by § 362(a)(3) and § 362(a)(4) remains in effect because the Debtor's interest in the leasehold is property of the estate. Third, the landlord must proceed in state court on the basis of his rights created under the lease, and may not treat the lease as breached solely because of the trustee's rejection. When these three conditions are satisfied, the landlord may proceed in a state court without the need to obtain a prior order of a Bankruptcy Court that the § 362(a) stay has been conditioned, modified, or terminated under § 362(d).

For these reasons the Court concludes that Rich Mar is not stayed by § 362(a) from proceeding in State Court against the Debtor on the basis of post-petition defaults. Accordingly, no relief can be had upon the complaint as filed in this Court, because in the absence of a stay none would be appropriate.

For the foregoing reasons, it was the 26th day of November, 1980, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Complaint to Terminate or Modify Automatic Stay filed by Rich Mar Apartments be DENIED.

---

the trustee rejects a residential lease not otherwise in default. *See, e. g.* H.R.Rep.No.95–595, 95th Cong., 1st Sess. 347 ·50, U.S.Code Cong. & Admin.News 1978, 5963 (1977).