In re Stephanie JAMES, Debtor.

## HOUSING AUTHORITY OF The CITY OF PITTSBURGH, Movant,

v.

**Stephanie JAMES, Respondent.**

**Bankruptcy No. 96–20631–BM.**
**Motion No. 96–1883M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 8, 1996.

Henry Salvi, Associate Counsel, Housing Authority of City of Pittsburgh, Pittsburgh, PA, for HCAP.

David M. Lame, Neighborhood Legal Services Association, Pittsburgh, PA, for Debtor.

## Motion Requesting Relief From The Automatic Stay
### MEMORANDUM OPINION

BERNARD MARKOVITZ, Chief Judge.

Housing Authority of the City of Pittsburgh (hereinafter "HACP") seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) so that it may evict Stephanie James (hereinafter "debtor") from an apartment it provides in which debtor continues to reside.

Debtor has objected to HACP's motion for relief from stay on various interrelated grounds.

The motion shall be granted for reasons set forth below.

### —FACTS—

Debtor is an unmarried mother with five children, the oldest of whom is five years of age. She lives in public housing provided by HACP. The monthly rent for the apartment is $129.00.

When debtor defaulted on rents due prior to February of 1996, HACP obtained a money judgment against debtor in state court and an order directing her to vacate the apartment.

On February 9, 1996, before she could be physically evicted, debtor filed a voluntary chapter 7 petition. The primary, if not sole, reason debtor filed for bankruptcy was to prevent HACP from evicting her. Debtor continues to reside in the apartment. The record does not indicate whether debtor is current on all postpetition rents and other charges. Debtor claims that she is; HACP claims that she is not.

The schedules accompanying the bankruptcy petition indicate that debtor owns only household goods and furnishings with a declared value of $300.00, all of which she has claimed as exempt. There are no secured or priority claims. The only claims against

debtor are unsecured nonpriority claims that total $1,603.73. HACP has a claim in the amount of $1,214.73 for unpaid rent. The remaining claim in the amount of $389.00 is for telephone service.

Schedule G, Executory Contracts and Unexpired Leases, lists a lease with HACP.

According to her bankruptcy schedules, debtor's total monthly income is $1,056.05. She receives $670.00 in welfare, $360.00 in food stamps, and $26.05 in unspecified support payments. Her monthly expenses, including rent, total $909.00.

Neither debtor nor the chapter 7 trustee sought to assume or to reject debtor's lease with HACP within sixty days of February 9, 1996.

At present there are more than two thousand applicants for public housing provided by HACP. They are on a waiting list.

HACP has submitted a motion for relief from the automatic stay. Debtor vigorously opposes the motion and insists that she is entitled under the Bankruptcy Code to remain in the apartment even though she admittedly defaulted on her obligation to pay prepetition rent.

A hearing was held on July 23, 1996, on HACP's motion and debtor's objection thereto.

## —DISCUSSION—

In support of its motion for relief from stay, HACP asserts that debtor's lease is

1. 11 U.S.C. § 365(d)(1) provides as follows:

    In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

2. 11 U.S.C. § 362(d)(2) provides as follows:

    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— . . .
    (2) with respect to a stay of an act against property under subsection (a) of this section, if—

deemed rejected by operation of law pursuant to 11 U.S.C. § 365(d)(1)[1] because no action was taken to assume or reject it within sixty days of February 9, 1996. Relief from the automatic stay is warranted pursuant to 11 U.S.C. § 362(d)(2)[2], HACP concludes, because debtor has no equity in the apartment and does not need it to effectively reorganize as she filed a chapter 7 petition.

Debtor responds that relief from stay should not be granted because any action to evict her from the apartment would violate the anti-discrimination provision set forth at 11 U.S.C. § 525(a).[3] She further argues that the requirements set forth at 11 U.S.C. § 365 do not apply in this case because 11 U.S.C. § 525(a) "overrides" it. Finally, debtor insists that relief from the automatic stay is not warranted because she has equity in the property. According to debtor, a new lease was created when HACP accepted postpetition rents she tendered.

We shall address debtor's various contentions as *ad seriatim*.

### A.) Would Action Taken By HACP To Evict Debtor Violate 11 U.S.C. § 525(a)?

Section 525(a) codifies *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which held that a state law requiring suspension of a driver's license until payment of an accident-related tort judgment violated the "fresh start" policy of bankruptcy. *See* S.Rep. No. 989, 95th Cong., 2d Sess.,

(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to a effective reorganization. . . .

3. 11 U.S.C. § 525(a) provides in relevant part as follows: .

    . . . [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to . . . a person that is or has been a debtor under this title . . . solely because such bankrupt or debtor is or has been a debtor under this title . . ., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title. . . .

81, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5867; H.R.Rep. No. 595, 95th Cong., 1st Sess., 367, *reprinted in* 1978 U.S.Code Cong. & Admin.News. 5963, 6322. The types of actions listed in § 525(a) are not exhaustive. It prohibits actions by governmental units "that can seriously affect the debtor's livelihood or fresh start". S.Rep. at 81, 1978 U.S.Code Cong. & Admin.News at 5867; H.R.Rep. at 367, 1978 U.S.Code Cong. & Admin.News at 6323.

Courts have taken different approaches in delineating the scope of § 525(a).

Some courts have focused on the policies of rehabilitation and of granting a "fresh start" and have construed § 525(a) broadly to prohibit any actions that would tend to frustrate realization of these policies. *See, e.g., In re Sudler,* 71 B.R. 780, 786–87 (Bankr.E.D.Pa. 1987). Under this approach, a debtor need not demonstrate that a governmental unit denied it some benefit solely because of the bankruptcy filing. Debtor instead only needs to show that the bankruptcy filing played a "significant role" in accounting for adverse action taken by a governmental unit. *See In re Metro Transportation Company,* 64 B.R. 968, 975 (Bankr.E.D.Pa.1986).

Other courts have focused on the express language of § 525(a) and have construed it narrowly. They have limited application of § 525(a) to situations closely analogous to those enumerated in the statute. These courts have required proof that the discrimination was caused *solely* by debtor's bankruptcy status. *See In re Exquisito Services, Inc.,* 823 F.2d 151, 153 (5th Cir.1987); *Duffey v. Dollison,* 734 F.2d 265, 273 (6th Cir.1984).

The plain language of § 525(a), which contains the phrase "solely because", as well as its legislative history convince us that § 525(a) must be construed narrowly rather than broadly. If debtor is to prevail on the basis of § 525(a), she must establish that HACP seeks to take action against her *solely because* of her bankruptcy status. It is not enough to show that her bankruptcy filing played a "substantial role". Section 525(a) is

not violated, even if one of the grounds enumerated therein is present, so long as the governmental unit also has a *bona fide* reason other than those enumerated therein for taking action against debtor.[4]

According to debtor, HACP's request for relief from stay so it may evict her from the apartment violates § 525(a) in that HACP seeks to revoke a governmental grant of a rent subsidy to her "solely because" she has not paid a dischargeable prepetition debt. As authority for her position, debtor relies upon the following cases: *In re Sudler, supra; In re Szymecki,* 87 B.R. 14 (Bankr. W.D.Pa.1988); *In re Curry,* 148 B.R. 966, 969 (S.D.Fla.1992).

Debtor's contention is without merit. Our review of the situation convinces us that HACP does not seek to evict her "solely because" she wishes to have a prepetition debt for rent discharged. To the extent that these cases would mandate the outcome debtor desires under the facts and circumstances of this case, we respectfully decline to follow them.

As we have indicated, § 525(a) does not apply when a governmental unit takes adverse action against a debtor which in part arises out of the debtor seeking a discharge of a prepetition debt owed to a governmental unit, provided that it also has another *bona fide* reason for taking action which is not expressly proscribed by § 525(a).

No attempt was made to assume the lease debtor had with HACP within sixty days of the order for relief. If § 365(d)(1) applies in this instance, debtor's lease with HACP is deemed rejected by operation of law.

As a general matter, it is not violative of § 525(a) for a governmental unit to take action against a debtor in bankruptcy by availing itself of rights and protections accorded to it by other sections of the Bankruptcy Code. *See In re Caldwell,* 174 B.R. 650, 654 (Bankr.N.D.Ga.1994). For instance, a governmental unit does not violate § 525(a) when it seeks to evict a debtor from an

---

4. Although it evidently has not expressly so held, the United States Court of Appeals for the Third Circuit appears inclined towards the view that § 525(a) should be construed narrowly. *See*

*Watts v. Pennsylvania Housing Finance Company,* 876 F.2d 1090, 1093–94 (3d Cir.1989); *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 85 (3d Cir.1988).

apartment after the lease is deemed rejected by virtue of § 365(d)(1). Because it was rejected, the lease no longer is in effect.

HACP does not violate § 525(a) by requesting relief from the automatic stay so it may evict debtor. It does **not** seek to evict debtor "solely because" she has taken steps to have her prepetition debt for rent discharged. Instead, HACP seeks relief from the automatic stay because the lease in question is no longer in effect because it was deemed rejected by operation of § 365(d)(1). Debtor has no right to occupy the apartment and HACP has no obligation to allow her to remain in possession.[5]

The fact that HACP commenced eviction proceedings and had obtained a money judgment against debtor before she sought bankruptcy protection reinforces our conclusion that its desire to evict debtor is not motivated solely by her quest to have the debt for prepetition rent discharged in bankruptcy. *See Robinson v. Chicago Housing Authority,* 54 F.3d 316, 324 (7th Cir.1995). HACP previously was unable to evict debtor only because she filed for bankruptcy before a writ of possession was served on her.

There is yet another reason why HACP seeks to evict debtor. As a governmental unit, HACP has a fiduciary obligation to the taxpayer and an obligation to the more than two thousand applicants who wish to enjoy the significant benefits of publicly-funded housing. HACP also seeks relief from stay from stay to evict debtor so that it may discharge these obligations. HACP has an obligation to the taxpayer to ensure that tenants pay their rent and an obligation to other applicants to make such housing available to them.

It should be noted in connection with this last point that debtor's predicament is entirely of her own making. If her schedules are to be believed, debtor's reported monthly income exceeds her reported monthly ex-

penses, **including rent,** by nearly one hundred and fifty dollars. It would be unfair to others to permit debtor to remain in possession of the apartment when she has the ability to pay rent but simply failed to do so for unknown reasons.

To rule in favor of debtor on this matter would pervert § 525(a) by turning it into a sword rather than a shield. Debtor would be treated preferentially in comparison to other public housing tenants who pay their rent and to others who do not but who fail to file for bankruptcy. Such an outcome goes far beyond providing debtor with a "fresh start". Congress never intended when it enacted § 525(a) for it to be used as debtor indicates.

### B.) Does 11 U.S.C. § 525(a) Override 11 U.S.C. § 365?

Not only was no attempt made to assume debtor's lease within sixty days of February 9, 1996, there also was no compliance with 11 U.S.C. § 365(b)(1). Debtor nonetheless insists that she is entitled to remain in possession of the apartment as long as she stays current on postpetition rent.

*Sudler* and *Curry, supra,* articulate different rationales for why § 525(a) "overrides" § 365 in this instance.

*Sudler* relies upon policy considerations in according § 525(a) priority over § 365(b)(1):

> We believe that the strong public policy of 11 U.S.C. § 25 **overrides** the potential requirement of 11 U.S.C. § 65(b)(1) that a debtor assuming a lease must cure any pre-petition defaults or otherwise provide adequate protection to the landlord. (Emphasis added.)

*Sudler,* 71 B.R. at 787.

*Curry* resorts to a canon of statutory construction in giving § 525(a) priority over § 365(b)(1):

---

**5.** Another non-discriminatory basis for seeking relief from the automatic stay was articulated in *In re Lutz,* 82 B.R. 699 (Bankr.M.D.Pa.1988). It is not violative of § 525(a) for a governmental unit to take action against a chapter 7 debtor when a debtor has materially defaulted on its prepetition obligations under a lease. A landlord (in this instance HACP) is excused from further

performance and may seek relief from the automatic stay to take action to evict the debtor, who has no reasonable expectation that the landlord will (or must) continue to maintain its relationship with the debtor. Election by the landlord to seek relief from stay to terminate the relationship when the debtor has defaulted is not discriminatory *per se.* 82 B.R. at 704.

... 11 U.S.C. § 525(a) controls over 11 U.S.C. § 365(b)(1)(A), because as a matter of statutory construction § 525(a) is more specific. *In re Nadler,* 122 B.R. 162, 166 (Bankr.D.Mass.1990) (citing *Jett v. Dallas Independent School Dist,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989))....

*Curry,* 148 B.R. at 972.

Neither of these arguments is persuasive. We are not convinced that § 525(a) "overrides" § 365 in this instance.

*Sudler* is flawed in that it accords the "fresh start" principle, which § 525(a) is designed to protect, exaggerated significance while according little or no significance to the interests protected by § 365. Section 365(d)(1), for instance, protects lessors whose lessees are chapter 7 debtors in bankruptcy. Its purpose is to prevent parties having lease relationships with a debtor from being kept in doubt as to their status with respect to the bankruptcy estate. *See In re Cannonsburg Environmental Associates, Ltd.,* 72 F.3d 1260, 1266 (6th Cir.1996). The above statement from *Sudler* asserts, without any argument or justification, that the "fresh start" principle which § 525 is meant to protect is more important than and therefore takes priority over the interest of landlords which § 365(d)(1) is supposed to protect. The emphasis can only be described as personal judicial agenda. Clearly that cannot be the basis of a judicial decision.

The implication of the view set forth in *Sudler* is obvious. The lease of a chapter 7 debtor who occupies residential real property provided by a governmental public housing authority is not terminated by operation of law without regard to whether the trustee takes action to assume the lease within sixty days of the order for relief. The *status quo ante* is preserved, even through Congress promulgated and the President executed a Code and Code section to the contrary.

We discern no good reason why the "fresh start principle" should effectively render § 365(d)(1) a nullity where a chapter 7 debtor occupies residential real property under a petition lease with a governmental public housing authority. Section 365(d)(1) is also an important provision of the Bankruptcy Code. If we are to avoid such a drastic outcome, as we believe we must, § 365(d)(1) must be given effect even where the lessee is a chapter 7 debtor residing in public housing.

The above assertion in *Curry* that § 525(a) "controls over" § 365(b)(1) because § 525(a) is more specific than § 365(b)(1) also is without merit.

A statute should be construed, if possible, so that all of its provisions are brought into harmony. *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990). If the provisions cannot be harmonized, the more specific prevails over the less specific. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987).

In our estimation, § 525(a) and § 365(b)(1) are not irreconcilable. It is *not* discriminatory for purposes of § 525(a) to require one who assumes a lease to cure all prepetition defaults as a precondition to assumption. Accordingly, there is no need to determine which of these provisions takes priority in this instance.

However, if it is necessary to give priority to either of the Code provisions over the other, we would give priority to § 365(b) because it is in fact more specific than § 525(a).

The *Curry* court said that section 525(a) prevails over section 365 because section 525(a) is more specific. This is a strained argument at best. Section 365 is about as specific as it can be about what it takes to assume a lease and section 525(a) does not even mention leases. Under the logic of *Curry,* no landlord could ever insist on a cure of prepetition defaults because section 524 enjoins any act to collect a discharged debt.

*Caldwell,* 174 B.R. at 654. We concur in and adopt this reasoning. A rationale to the contrary ignores the obvious.

### C.) Should HACP Be Granted Relief From The Automatic Stay?

It remains for us to determine whether HACP is entitled to relief from the auto-

matic stay so that it may evict debtor from the apartment she continues to occupy so that HACP may obtain possession thereof. We are mindful of and sympathize with the needs of the debtor. We are also mindful of the oath of office taken as well as our duty to comply with the law as stated by the legislative branch.

Relief from the automatic stay *shall* be granted with respect to an act against property if the debtor has no equity therein and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2).

It is undisputed that the property against which HACP seeks to take action is not necessary to an effective reorganization. Debtor has filed a chapter 7 petition and does not seek to reorganize.

Debtor does, however, assert somewhat half-heartedly that she has equity in the property because HACP has accepted postpetition rents she tendered. Her opposition to HACP's motion, we suspect, is primarily based on the assertions that § 525(a) overrides § 365 and that it would violate § 525(a) if HACP evicted her. She appears to recognize that nothing stands in the way of granting HACP relief from the automatic stay if we reject these other assertions.

The contention that debtor has equity in the property from which HACP seeks to evict debtor is without merit.

For purposes of § 362(d)(2), equity is the difference between the value of the subject property and the amount of the encumbrances against it. *See Matter of Sutton*, 904 F.2d 327, 329 (5th Cir.1990). Debtor has no equity in the property from which HACP seeks to evict her. To the contrary, she promised to pay a subsidized base rent but failed to do so even though her welfare grant contained a sum sufficient. Any interest she may have had therein terminated when the lease was deemed to be rejected pursuant to § 365(d)(1).

Debtor at most is a holdover tenant with a month-to-month tenancy. She has no "equity" in anything that would prevent HACP from taking steps to evict her from the apartment she continues to occupy so that it may be leased to some other worthy candidate on the waiting list.

A lease is "in the nature of a contract" and is governed by principles of contract law. *See 2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies*, 319 Pa.Super. 228, 236, 466 A.2d 132, 136 (1983), *aff'd*, 507 Pa. 166, 489 A.2d 733 (1985). There clearly was no offer, acceptance, or consideration for the new lease.

Although HACP unquestionably accepted postpetition rents from debtor, it did **not** thereby manifest an intent to enter into a new lease with debtor. The circumstances surrounding this case compel a conclusion to the contrary. HACP had attempted to evict debtor for defaulting on rent but was prevented from achieving its objective when debtor filed a chapter 7 petition. It accepted postpetition rents tendered by debtor only to minimize the loss it and, ultimately, the taxpayer suffered while debtor continued residing in the apartment. For HACP to have done otherwise by refusing postpetition rents would have resulted in a greater loss to the taxpayer in this time of budgetary constraint. To find assent by HACP to a new lease would, in our estimation, misconstrue the reason why HACP accepted postpetition rent from debtor.

Moreover, HACP's acceptance of postpetition rents tendered by debtor while she remained in possession of the apartment does not imply acquiescence on its part to continuation of the prior lease. HACP has persisted in asserting its right to evict debtor. *See Reading Terminal Merchants Association by Asteris v. Samuel Rappaport Assocs.*, 310 Pa.Super. 165, 456 A.2d 552 (1983). The lease that was deemed rejected by operation of § 365(d)(1) was not revived by virtue of HACP's acceptance of these rents.

An order granting HACP relief from the automatic stay shall issue.