**In re Kimale COLLINS, Debtor.**

**HOUSING AUTHORITY OF the CITY OF PITTSBURGH, Plaintiff,**

v.

**Kimale COLLINS, Defendant.**

**Bankruptcy No. 96–21036–MBM. Motion No. 96–1927.**

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 20, 1996.

Henry Salvi, Housing Authority of the City of Pittsburgh, Pittsburgh, PA, for plaintiff.

Barbara Kern, Neighborhood Legal Services Association, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

### STATEMENT OF FACTS

The Housing Authority of the City of Pittsburgh (Housing Authority), plaintiff in this matter, brought this motion seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) so that it could proceed with eviction proceedings against Kimale Collins, the Chapter 7 debtor and defendant herein. This Court granted the Housing Authority's motion after notice and a hearing held on July 30, 1996. This memorandum opinion sets forth in detail the basis for this Court's decision, which was entered by order on July 30, 1996.

Both parties agreed that neither the debtor nor the Chapter 7 trustee had assumed the debtor's residential lease with the Housing Authority within the 60–day period subsequent to the filing of her bankruptcy petition, thus effecting a rejection of the lease pursuant to 11 U.S.C. § 365(d)(1).[1] The debtor asserted that such rejection then effected an abandonment of her rights in the lease to herself, which placed her in the position that she would have been in absent the commencement of her bankruptcy case. Although conceding that applicable nonbankruptcy law (i.e., federal public housing law[2] and Pennsylvania landlord/tenant procedures[3]) permitted the Housing Authority to dispossess her of the leased premises because she had defaulted in the provisions of her lease by failing to pay $1,180.00 in prepetition rent, which default she also refused

---

**1.** 11 U.S.C. § 365(d)(1) provides, in pertinent part, as follows:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property ... of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C.A. § 365(d)(1) (West 1996).

**2.** 24 C.F.R. 966.4(*l*)(2)(i) provides, in pertinent part, as follows:

> [A] P[ublic] H[ousing] A[uthority] shall not terminate or refuse to renew the lease [of a public housing tenant] other than for serious or repeated violation of material terms of the lease *such as failure to make payments due under the lease* or to fulfill ... [other] tenant obligations ... or for other good cause.

24 C.F.R. 966.4(*l*)(2)(i) (West 1996) (emphasis added).

**3.** Pennsylvania's District Justice Rules 501–582 provide the method for recovery of possession of real property. Pa.R.C.P.D.J., Rule 501–582, 42 Pa.Cons.Stat.Ann. (Purdon's 1990).

to cure post-petition,[4] she nevertheless argued that 11 U.S.C. § 525(a) prohibited the Housing Authority from seeking enforcement of such nonbankruptcy law. 11 U.S.C. § 525(a) provides, in pertinent part, that

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, [or] discriminate with respect to such a grant against … a person that is or has been a debtor under this title … solely because such bankrupt or debtor … has not paid a debt that is dischargeable in the case under this title.

11 U.S.C.A. § 525(a) (West 1996). Primarily on this basis the debtor objected to the Housing Authority's motion for relief from the automatic stay.

The debtor also pressed two additional arguments in opposition to the Housing Authority's motion: (a) that relief from stay was not warranted pursuant to § 362(d)(2) because she had equity in the leasehold by virtue of her possessory rights in the premises as recognized under Pennsylvania state law, and (b) that acceptance by the Housing Authority of her post-petition rent payments resulted in either the establishment *de facto* of a new lease between the parties or acquiescence to continuation of the old lease.

The Housing Authority, on the other hand, maintained that it could properly seek to dispossess the debtor of the leased premises because (a) applicable nonbankruptcy law provides for such a result given the debtor's contractual default, its pre-petition receipt of a state court judgment against her, and her refusal to cure such default,[5] and (b) § 525(a) does not prevent governmental landlords from pursuing such action. With respect to § 525(a), the Housing Authority argued that § 525(a) does not preclude it from asserting its right under 11 U.S.C. § 365(b)(1)[6] to condition the trustee's assumption of the lease upon a cure of the pre-petition default (ie., the outstanding pre-petition rent) or an adequate assurance thereof, and, implicitly, that such right, which is provided under applicable nonbankruptcy law, should also survive in the event that the trustee fails to assume such lease.

### DISCUSSION

The significant facts presented, issues raised, and relief sought, in this matter are identical to that found in *Housing Authority of the City of Pittsburgh v. Stephanie James (In re James)*, 198 B.R. 885 (Bankr.W.D.Pa. 1996) (Chief Judge Markovitz). In that case, the *James* court granted the Housing Authority's motion for relief from stay so that it could proceed with an eviction proceeding against one of its tenants, holding that (a) "a governmental unit does not violate § 525(a) when it seeks to evict a debtor from an apartment after the lease is deemed rejected by virtue of § 365(d)(1)" because its action, rather than being taken *solely* in response to the debtor's nonpayment of a pre-petition debt, is also a means by which it "avail[s] itself of rights and protections accorded to it by other sections of the Bankruptcy Code,"

---

**4.** A tenant may cure such default under Pennsylvania's District Justice Rule 518, which provides, in pertinent part, as follows:

> At any time before actual delivery of the real property is made in execution of the order for possession, the defendant may, in a case for the recovery of possession solely because of failure to pay rent, satisfy the order for possession by paying to the executing officer the rent actually in arrears and the costs of the proceedings.

Pa.R.C.P.D.J., Rule 518, 42 Pa.Cons.Stat.Ann. (Purdon's 1990).

**5.** The pertinent nonbankruptcy law is set forth in footnotes 2–4 of this opinion.

**6.** 11 U.S.C. § 365(b)(1) provides, in pertinent part, as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C.A. § 365(b)(1) (West 1996).

*James,* 198 B.R. at 888, (b) 11 U.S.C. § 525(a) does not override 11 U.S.C. § 365(b)(1) but rather, at a minimum, may be harmonized therewith or, at a maximum, is subordinated thereto given that § 365(b)(1) "is in fact more specific than § 525(a)," *Id.* at 890, (c) a lessee of residential real property does not have an equity either in such realty or in the lease thereof, at least within the meaning of "equity" as that term is used in § 362(d)(2)(A), *Id.* at 890–91, and (d) acceptance by a lessor of post-petition rent payments from a lessee does not, by itself, result *de facto* in either the establishment of a new lease or the acquiescence to continuation of the old lease between the parties. *Id.* at 891.

■ We wholeheartedly concur in and, thus, adopt the holdings and rationale of *In re James.* Furthermore, the *James* court noted that, to the extent that its decision was inconsistent with *In re Sudler,* 71 B.R. 780 (Bankr.E.D.Pa.1987), *In re Szymecki,* 87 B.R. 14 (Bankr.W.D.Pa.1988), and *In re Curry,* 148 B.R. 966 (S.D.Fla.1992), it respectfully declined to follow those cases. *James,* 198 B.R. at 888. We concur with the *James* court in this regard also and, thus, we too respectfully decline to follow those cases. Finally, we rely on the *James* decision in disposing of all but one of the issues raised by the debtor in this matter. In particular, on the basis of *James,* we hold (a) that § 525(a) does not prevent the Housing Authority from exercising its rights pursuant to §§ 365(b)(1) and 365(d)(1) with respect to a bankruptcy trustee,[7] (b) the debtor does not have an equity in the leased premises or the leasehold itself by virtue of state recognized possessory rights, and (c) the Housing Authority, by virtue of its acceptance in this case of post-petition rent payments from the debtor, did not also thereby enter into a new

lease or acquiesce in continuation of the old lease with the debtor.[8]

■ However, we hold that the automatic rejection of the lease in this bankruptcy case pursuant to § 365(d)(1) effected an abandonment back to the debtor of her rights in the lease. *In re Rosemond,* 105 B.R. 8, 9 (Bankr.W.D.Pa.1989); *In re Knight,* 8 B.R. 925, 929 (Bankr.D.Md.1981); *Szymecki,* 87 B.R. at 15 (Bankr.W.D.Pa.1988). That being the case, the debtor was essentially placed in the position that she would have been in absent the commencement of this bankruptcy case, *Rosemond,* 105 B.R. at 9, or put another way, her right to possession as it existed pre-petition was not, in any way, modified by this bankruptcy case other than to extend such possessory right for a period of time, pursuant to the automatic stay, without payment of the outstanding pre-petition rent. The debtor pre-petition faced certain dispossession of the leased premises pursuant to applicable nonbankruptcy law[9] given (a) her default in the lease, (b) the state court judgment against her, and (c) her refusal to cure such default. The lone remaining issue is whether § 525(a) prevents a governmental creditor such as the Housing Authority from seeking enforcement of such applicable nonbankruptcy law. We answer this question in the negative and hold that § 525(a) cannot be read to have this effect.

■ First of all, the applicable nonbankruptcy law is very specific both with respect to public housing tenancies and Pennsylvania landlord/tenant procedures, and these bodies of law overlap with § 525(a) in this instance. While § 525(a) of the Bankruptcy Code will preempt Pennsylvania law pursuant to the Supremacy Clause of the United States Constitution, regulations of the Department of Housing and Urban Development (H.U.D.)

---

**7.** In conjunction with our reliance on *James see also* our discussion at pages 10–13 of this opinion.

**8.** Indeed, one can argue that the Housing Authority had a duty to accept rent on a month-to-month basis post-petition in order to (a) mitigate damages pending this Court's resolution of this matter, and (b) fulfill its fiduciary duty to taxpayers, *James,* 198 B.R. at 889. Furthermore, " '[t]he decisions are many which hold that even after the lease is deemed rejected, ... [a] land-

lord may freely accept use and occupation payments from a holdover debtor without waiving the deemed rejection.' " *In re Elephant Bar Restaurant, Inc.,* 195 B.R. 353, 357 (Bankr.W.D.Pa. 1996) (citing *In re Food Barn Stores, Inc.,* 174 B.R. 1010, 1015 (Bankr.W.D.Mo.1994), which cited *In re Fosko Mkt., Inc.,* 74 B.R. 384 (Bankr. S.D.N.Y.1987)).

**9.** The pertinent nonbankruptcy law is set forth in footnotes 2–4 of this opinion.

under 24 C.F.R. will not necessarily bow to provisions of the Bankruptcy Code given that both are federal in nature. Because neither body of federal law is informative as to how to proceed in the instance where they overlap, this Court holds in this instance that the federal public housing law overrides the federal bankruptcy law because it is more specific in its terms given that § 525(a) does not explicitly refer to either (a) public housing subsidies in general, or (b) particular leasing contracts whereby such assistance is delivered. This decision is premised upon the general rule of statutory construction that, "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1973). We believe that this doctrine, although not precisely on point in this instance given that the pertinent public housing law is a regulation rather than a congressional enactment, is nevertheless pertinent, and its use in this case proper, because H.U.D.'s regulatory scheme regarding public housing assistance is clearly more narrow than is the Bankruptcy Code in the province over which it governs.

Secondly, to read § 525(a) as broadly as the debtor wishes would result in subjecting bankruptcy trustees,[10] but not debtors, to the conditional cure provisions of § 365(b)(1) when considering assumption of executory contracts or unexpired leases involving governmental entities. Were we to sanction this preposterous result, bankruptcy trustees would be forced on many occasions, because of financial constraints of an estate, to abandon to debtors contracts or leases, oftentimes quite valuable, that the debtors could then take advantage of notwithstanding their contractual defaults in the form of outstanding pre-petition debts. This reading of § 525(a) and its consequent incongruity could have even more disastrous results in (a) Chapter 11 cases, where a debtor in possession, rather than a trustee, makes the decision regarding assumption or rejection of leases and executory contracts, and (b) Chapter 13 cases, where, although there is a Chapter 13 trustee, such decisions to assume or reject

are nevertheless made by the debtor. Could the debtor (or debtor in possession) reject the governmental lease or executory contract, abandon it to itself, plead the applicability of § 525(a), and then take advantage of such lease or contract in whatever fashion it pleased unhindered by pre-petition defaults? At a minimum, would Congress, on behalf of the federal government and its instrumentalities if not state or local governmental entities, have sanctioned such results? We think not. We cannot believe that Congress, when enacting § 525(a), could have envisioned, nor would it have deemed desirable, that a debtor could thereby receive such windfalls.

■ Thirdly, § 525(a), while requiring a governmental creditor to continue to provide certain "grant[s]," nevertheless does not require that such entity continue in particular prior contractual relationships with a debtor provided that it continues to provide those "grant[s]." *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 85 (3rd Cir.1988). The Housing Authority in this case merely sought to end its particular contract with the debtor in accordance with the terms of such agreement while at the same time, on a space available basis, continuing to provide to the debtor an identical housing subsidy. We find that § 525(a) does not require any more than this.

■ Fourth, this decision is proper given that § 525(a), by its terms, only prohibits discrimination *"solely because"* a debtor, inter alia, has not paid a dischargeable debt. That being the case, "[s]ection 525(a) is not violated, even if one of the grounds enumerated therein is present, so long as the governmental unit also has a *bona fide* reason other than those enumerated therein for taking action against [the] debtor." *James*, 198 B.R. at 888 (emphasis theirs). The Housing Authority, while not possessing innumerable bona fide reasons for its decision to seek dispossession of the debtor, nevertheless convinced this Court that its actions were not taken solely as a reaction to the debtor's continued unwillingness to cure the pre-petition default. In particular, the Housing Authority had already secured a judgment

10. *See also* our discussion at pages 567–68 of this opinion.

against the debtor pre-petition, which entitled it to seek dispossession under Pennsylvania law notwithstanding Pennsylvania's District Justice Rule 518, which permits a tenant to cure rent arrearages at any time before dispossession actually occurs. Furthermore, the Housing Authority asserted that it also sought to dispossess the debtor because of the negative consequences that would result if it did not dispossess the debtor, such as (a) its consequent inability to deliver public housing assistance to other applicants presently on a waiting list who stood ready and willing to comply with their financial obligations, and (b) the possibility, if not likelihood, of undesirable actions by H.U.D. regarding the Housing Authority's continued control over its delivery of public housing assistance.

Finally, given the conflicting decisions regarding the intersection of §§ 525(a) and 365, we also wish to expand upon the following logic set forth in *In re Caldwell,* 174 B.R. 650, 654 (Bankr.N.D.Ga.1994), and which was also relied upon by the *James* court, *James,* 198 B.R. at 890:

> ■ The *Curry* court said that section 525(a) prevails over section 365 because section 525(a) is more specific. That is a strained argument at best. Section 365 is about as specific as it can be about what it takes to assume a lease and section 525(a) does not even mention leases. Under the logic of *Curry,* no landlord could ever insist on a cure of prepetition defaults as the price of assumption because section 524 enjoins any act to collect a discharged debt.

*Caldwell,* 174 B.R. at 654. The last sentence of this quote is quite informative indeed because there can be no doubt that every court, notwithstanding the prohibition against acts by creditors to collect discharged debts pursuant to § 524(a)(2),[11] has nonetheless recognized the coexistence of § 365(b)(1) and the right of private landlords

to insist upon a cure of such debts or adequate assurance thereof in connection with assumption of unexpired leases. The import of this is that courts have recognized that Congress expressly carved out for landlords a narrow exception to the general rule that creditors may not take actions post-petition to collect pre-petition debts. To view § 365(b)(1) in this way makes sense for, in general, the Bankruptcy Code, post-discharge, does not require spurned creditors to continue their past relationships with a debtor. *See, e.g., Pennsylvania State Employees Credit Union,* 851 F.2d at 85. However, notwithstanding that principle, § 365(a)[12] expressly requires such a concession of spurned landlords. Given that concession, Congress rightly felt that the bankruptcy trustee should also have to ante up with a similar concession in the form of a cure of certain of the debtor's pre-petition defaults or an adequate assurance thereof.

■ Section 525(a) also requires all governmental creditors to continue certain of their past relationships with a debtor by prohibiting certain enumerated acts of such creditors. However, noticeably missing from that list of prohibited acts are actions regarding unexpired leases. Given that the statutory rules of construction mandate that a statute should be construed, if possible, so that all of its provisions are brought into harmony, *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 375–77, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990), such omission eases the task of harmonizing, and thereby giving effect to both, § 525(a) and § 365(b)(1). Therefore, this Court holds as a matter of law that, notwithstanding § 525(a)'s prohibition against certain acts by a governmental entity undertaken "solely because ... [a] debtor ... has not paid a debt that is dischargeable in the case under this title," such entity, in its capacity as a landlord, may nevertheless insist upon payment

---

**11.** 11 U.S.C. § 524(a)(2) provides as follows:
A discharge in a case under this title ... operates as an injunction against the commencement or continuation of an ... act, to collect, recover or offset any ... debt [discharged under section 727 of this title] as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C.A. § 524(a)(2) (West 1993).

**12.** 11 U.S.C. § 365(a) provides, in pertinent part, that a "trustee, subject to the court's approval, may assume or reject any ... unexpired lease of the debtor." 11 U.S.C.A. § 365(a) (West 1993).

of such debt pursuant to § 365(b)(1) if a trustee post-petition wishes to assume an unexpired lease and such debt constitutes a pre-petition default. Although one may argue that § 525(a) should not be reconciled with § 365(b)(1) in essentially the same manner as is § 524(a)(2) given the obvious difference between private and governmental entities, this Court asserts that such parallel reconciliation is desirable, if not necessary, because of the concessions forced upon a governmental landlord, which are at least as great, if not greater, than those put upon a private landlord. In particular, a governmental landlord such as the Housing Authority, in addition to its duty to continue in its lease relationship subsequent to a trustee's assumption thereof, must simultaneously delay fulfillment of its obligation to the numerous applicants presently awaiting their opportunity to enjoy the significant benefits of public housing.[13] Furthermore, negative repercussions such as possible discontinuation, or unfortunate and undesirable alterations in the delivery, of public housing assistance, as well as a clear breach of a governmental landlord's "fiduciary obligation" to taxpayers, *James,* 198 B.R. at 889, would result if a quid pro quo is not exacted from the trustee that wishes to assume a lease of the debtor with a governmental landlord.

### CONCLUSION

Because the Chapter 7 trustee did not assume the debtor's lease with the Housing Authority within 60 days of the filing of the debtor's petition, the lease was deemed rejected pursuant to 11 U.S.C. § 365(d)(1). Although such rejection effected an abandonment of the rights in the lease to the debtor, her default in the terms of that lease by

virtue of her rent arrearage, as well as the state court judgment entered against her in response thereto, entitled the Housing Authority to seek dispossession under applicable nonbankruptcy law. Section 525(a) does not prevent the Housing Authority from taking such action because, inter alia, federal public housing law will control when it overlaps with federal bankruptcy law given the more narrow province over which it governs. That being the case, the Housing Authority could proceed with its eviction proceedings provided that it secured from this Court relief from the automatic stay.[14] This Court **GRANTED** the Housing Authority's motion requesting such relief, pursuant to 11 U.S.C. § 362(d)(2), because (a) the debtor did not have an equity in the leasehold, and (b) given that this is a Chapter 7 case, such leasehold was not necessary to an effective reorganization. Furthermore, such relief was appropriate because the Housing Authority, although it accepted and continues to accept post-petition rent payments from the debtor, did not also thereby enter into a new lease or acquiesce in a continuation of the old lease.

By granting relief from the automatic stay this Court does not dispense with, or in any way interrupt, the debtor's mere possessory rights that are recognized pursuant to Pennsylvania state law. This decision merely divests the protections accorded the debtor's possessory rights by virtue of the automatic stay. Therefore, the Housing Authority must still comply with Pennsylvania state law in dispossessing the debtor of the leased premises.

---

**13.** Although not a part of the record in this case, this Court nevertheless notes that the Housing Authority, in a brief filed with this Court in support of a similar motion on its behalf in another case, has indicated that its present waiting list for public housing assistance approximates 2,800 applicants. *In re Jeanice Helen Clark,* Bankruptcy No. 96–21069–MBM, Motion No. 96–1882M; *see also James,* 198 B.R. at 889.

**14.** The Housing Authority needed to move for, and receive by order of this Court, such relief before it could proceed to dispossess the debtor. This is because, as the debtor points out correctly

in its response at paragraph 8, § 365(d)(1) does not require a residential tenant in a Chapter 7 case (or for that matter any chapter in title 11) to surrender to a lessor the premises that are being leased. Such requirement is only made with respect to nonresidential tenants in a Chapter 11 case pursuant to 11 U.S.C. § 365(d)(3). Furthermore, 11 U.S.C. § 362(a)(3) operates as a stay of "any act to obtain possession of property of the estate" and, pursuant to 11 U.S.C. § 541(a)(1), the debtor's mere possessory rights recognized under state law constitute property of the estate.