In re Donna M. JOHNSON, Debtor.

Donna M. Johnson, Plaintiff,

v.

Chester Housing Authority, Michael Lundy, and Michael E. Butler, Defendants.

Robert C. Rosenberg, Federal Receiver, Chester Housing Authority, for the U.S. District Court, E.D.PA., Plaintiff,

v.

Donna M. Johnson, Defendant.

Bankruptcy No. 99–34694DAS.
Adversary Nos. 00–0331, 00–0389.

United States Bankruptcy Court, E.D. Pennsylvania.

July 21, 2000.

See also 2000 WL 640790.

Gary Seitz, Palmer, Biezup & Henderson, Philadelphia, PA, trustee.

Frederic Baker, Ass't U.S. Trustee, Philadelphia, PA, United States Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

In this multi-court dispute between DONNA M. JOHNSON, a former Debtor and public housing tenant ("the Debtor"), and the CHESTER HOUSING AUTHORITY ("the CHA") and/or its receiver, ROBERT C. ROSENBERG ("the Receiver"), over the validity of the Debtor's eviction from public housing on the basis of a rent obligation possibly discharged by the Debtor's instant Chapter 7 bankruptcy case, our present task is to determine whether the Debtor's instant discharge was valid even though it was obtained within six years from her having been granted a prior Chapter 7 discharge, in violation of 11 U.S.C. § 727(a)(8). In addition, per the directive of the District Court ("the Court") in an order of July 14, 2000, as to an issue which remains before that Court, we will include a discussion of the issue of whether the Debtor should have been subject to eviction from public housing solely on the basis of a delinquency in pre-petition rent.

We conclude that the only means of eliminating the instant discharge once entered is for the former interim trustee, GARY F. SEITZ ("the Trustee"), or any other interested party (here, the Receiver), to prove grounds for revocation of the Debtor's discharge under 11 U.S.C. §§ 727(d)(3), a result portended by our previous decision in this case, *In re Johnson*, 2000 WL 640790, at *2 (Bankr. E.D.Pa. May 16, 2000) (*"Johnson I "*). We further hold that, in light of our findings that the then pro se Debtor, whose testimony was found credible, obtained her de-

Roger V. Ashodian, Chester, PA, for debtor.

Arthur John Kyriazis, Kyriazis and Associates, Lansdowne, PA, Richard Caplan, Paoli, PA, for the Receiver.

fective discharge through a series of circumstances and administrative oversight more logically attributed to the Receiver and the Trustee than to the Debtor, and not through any fraud or other intentionally wrongful conduct of the Debtor, the instant discharge is valid. Therefore, we will enter a judgment in favor of the Debtor in Adversary Proceeding No. 00–0389 ("Adv. 389") and a related motion in the main case before us.

The effect of this decision is to require some court to determine whether the Debtor's valid discharge should have prevented her eviction from public housing. We cannot decide this issue in Adversary Proceeding No. 00–0331 ("Adv. 331") seeking such relief filed in this court, for several reasons, most notably because the Court has not granted the Debtor permission to sue the CHA and/or the Receiver in this Court, requiring us to dismiss Adv. 331 without prejudice. Furthermore, although the Court has requested our views on the matter, we are limited in doing so because there has been no record made regarding other potential grounds for the Debtor's eviction, *e.g.*, the record is inconclusive regarding her post-petition rent payments. However, we herein reiterate our previous views, *see In re Day*, 208 B.R. 358, 363–69 (Bankr.E.D.Pa.1997), that, if the eviction were found to have been due solely to a pre-petition rent delinquency, it was invalid.

### B. PROCEDURAL AND FACTUAL HISTORY

The history of the instant dispute is herein traced back to an action brought by the CHA in a special arbitration court established in connection with the receivership of the CHA by the Court for the purpose of adjudicating disputes under the leases between the CHA and its tenants. *See general Day, supra,* 208 B.R. at 360. In that action the CHA sought to evict the Debtor from her public housing unit because of her nonpayment of rent. Following the arbitration hearing, Special Master

Seymour Kurland ("the Master") issued a disposition in favor of CHA on May 25, 1999, including a judgment in the amount of $3,070.08, plus attorney's fees in an unspecified amount.

The Debtor followed the procedure established by the Court for requesting a hearing for a review of the Master's decision before it. On or about September 30, 1999, the Court substantially upheld the Master's decision, and, on or about November 8, 1999, issued an "Order of Eviction," allowing the CHA to evict the Debtor from her unit.

Before that eviction took place, on November 22, 1999, the Debtor filed the instant underlying individual voluntary Chapter 7 case *pro se*, thereby staying the eviction. Subsequently, the Debtor received a discharge in this case on March 13, 2000. Following the entry of the discharge order, the CHA advised the Court, by a March 22, 2000, letter, that the Debtor had received her discharge, contending that this had the effect of "lifting" the automatic stay. The next day, March 23, 2000, the Court entered an order allowing the CHA to proceed with the eviction.

On the basis of this order, the CHA forcibly evicted the Debtor from her public housing unit on April 28, 2000. On May 2, 2000, having obtained representation from her local civil legal services program for the first time, the Debtor moved this court to reopen her closed bankruptcy case and filed Adv. 331 against the CHA and two CHA officials, Michael Lundy and Michael Butler, seeking therein temporary and permanent injunctive relief to restore her public housing tenancy. After a hearing on May 4, 2000, we ordered the bankruptcy case reopened, but denied the preliminary relief sought by the Debtor pending submissions of the parties by May 12, 2000.

On May 16, 2000, we entered *Johnson I*, reiterating our denial of preliminary relief to the Debtor because (1) the Debtor had not obtained the requisite permission to

bring suit against CHA or the Receiver from the Court, pursuant to the receivership order; and (2) we considered ourselves unable to overturn the Court's order. 2000 WL 640790, at *1–*2. We strongly advised the Debtor to attempt to remove these impediments by filing a motion to the Court forthwith, and maintained an established trial date of June 20, 2000, in Adv. 331 in the event that the Court granted such relief. *Id.* We also directed the CHA, the Trustee, or any other interested party to file any proceeding attacking the Debtor's discharge by May 25, 2000, and scheduled a trial on any such action filed on June 20, 2000, as well.

In response to our directives regarding challenges to the Debtor's discharge, the Trustee filed a Motion to Vacate or Set Aside Discharge of Debtor ("the Motion") on May 19, 2000, and the Receiver filed Adv. 389 on May 25, 2000. On June 9, 2000, the Defendants moved to dismiss Adv. 331 because the Debtor had as of yet filed no motion in the Court to attempt to remove the impediments to our going forward with Adv. 331 identified in *Johnson I.*

This filing spurred the Debtor to finally make the filing in the Court to attempt to remove these impediments. On June 27, 2000, to which date all matters were continued by agreement, the parties agreed to try the Motion and the Proceeding, mostly by incorporating the record made at the May 4, 2000, hearing. At the close of the trial we accorded the parties until July 12, 2000, to render submissions relevant to these matters and relisted the Adv. 331 trial on July 19, 2000. After a hearing on July 14, 2000, the Court vacated its March 23, 2000, order, but refused to grant the Debtor permission to try Adv. 331 in this court. Nevertheless, in that order the Court stated that it

> will consider findings of fact and conclusions of law issued by [this court] regarding [Adv. 331], specifically on the issue of whether Ms. Johnson's discharge precluded her eviction based on a

pre-petition judgment or her failure to assume her lease under 11 U.S.C. § 365.

We take this directive as a request that we discuss the issue of whether *Day* is good law in light of the apparently-contrary subsequent decision by Judge Sigmund of this court in *In re Bacon*, 212 B.R. 66 (Bankr. E.D.Pa.1997).

At the May 4, 2000, hearing, it was established that the Debtor had obtained a discharge in an earlier Chapter 7 bankruptcy case filed on September 19, 1995, Docket No. 95–17311DAS ("the 95 Case"), within six years of the filing of the instant bankruptcy case in which a discharge was also obtained, in violation of 11 U.S.C. § 727(a)(8). It was further established that the Debtor had filed a total of seven bankruptcy cases from 1991 through the instant case, although all but the 95 Case and the instant case had been dismissed. It was also established that the Debtor did not have legal counsel in any of her bankruptcy filings, but instead was assisted by an unpaid lay advocate, Carolyn Saunders.

The Debtor credibly testified that she was not aware of the precise date of the filing of the 95 Case nor the fact that obtaining a prior discharge within six years of the instant filing would affect her right to obtain a discharge in the instant case. The Debtor further stated that, at the time of filing the instant case, she had attempted to identify her previous bankruptcy cases in order that they could be referenced on forms in the instant case inquiring about prior filings, by obtaining assistance at the counter of Clerk's office of this court. Despite the Debtor's recitation of her correct name and social security number, the deputy clerk who assisted the Debtor discovered only three prior filings, not including the 95 Case, in a computer search. This discrepancy appears to have resulted because some of the cases included her middle initial as part of her name and some did not.

The transcript of the creditors' meeting of December 23, 1999, attended by the

CHA per the present counsel, was entered into the record in the May 4, 2000, hearing. Relying on the information obtained from the Clerk's office as a complete recitation of her prior cases, the Debtor did not reference the 95 Case in response to the Trustee's inquiries regarding same, but instead stated, erroneously but we find unknowingly, that all of her prior cases had been dismissed.

The Trustee ascertained that several discrepancies and omissions existed on the Debtor's schedules, notably a failure to identify her lease with CHA and the eviction suits against her, and she was requested to amend same. However, not waiting for these amendments, which the Debtor never did submit, the Trustee immediately, on December 23, 1999, filed his report recommending her discharge, resulting in her obtaining her discharge as of March 22, 2000.

At the May 4 hearing, the Receiver also brought out the fact that the Debtor, after her eviction, had made claims for personal property removed from her unit upon her eviction, and presumably in her possession when she filed this case, which were not listed on her Schedules or mentioned at the meeting of creditors, notably three televisions, two VCR's, two air conditioners, and a jar of coins in some undetermined amount.

## C. DISCUSSION

In *Johnson I*, at *2, we addressed the issue of whether the Debtor's obtaining a discharge in violation of 11 U.S.C. § 727(a)(8) could be attacked summarily, *i.e.*, by a motion to reconsider that order or to correct a clerical error, or by some such procedure. The result that it apparently could not be is included in the following discussion, at *id.*:

> Our research has revealed only one precedent which has presented this identical issue under the Bankruptcy Code, *In re Canganelli*, 132 B.R. 369 (Bankr. N.D.Ind.1991). The Debtor cites several cases decided under the predecessor

Bankruptcy Act to the same effect. *In re Wrobel*, 18 F.Supp. 623 (E.D.N.Y. 1936); and *Matawan Bank v. Feldman*, 12 N.J.Misc. 785, 174 A. 442 (1934).

The *Canganelli* court does not apply the reasoning suggested by the Defendants in their post-trial brief, *i.e.*, that the granting of a discharge in violation of § 727(a)(8) is comparable to a clerical error such as granting a discharge in the face of a decision denying a discharge. *See In re Ali*, 219 B.R. 653 (Bankr. E.D.N.Y.1998); and *In re Mann*, 197 B.R. 634 (Bankr.W.D.Tenn.1996).

Other analogous decisions appear to favor the *Canganelli*, result. *See Bluthenthal v. Jones*, 208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390 (1908) (allowing claims to "stand" in a subsequent bankruptcy case effectively waived any assertion that the discharge in a case which could have been denied on the ground that the presence of an earlier case barred a discharge could be raised); *Ginsberg v. Thomas*, 170 F.2d 1, 3–4 (10th Cir.1948) (same); *In re Barr*, 207 B.R. 160 (Bankr.N.D.Ill.1997) (creditor cannot revoke a discharge entered in violation of the terms of a stipulation with a creditor in the absence of fraud by the debtors). *But see In re Cisneros*, 994 F.2d 1462, 1465–67 (9th Cir.1993) (Chapter 13 discharge entered because a claim was not properly recorded can be set aside under Federal Rule of Bankruptcy Procedure 9024); *In re Brown*, 35 F.Supp. 619, 622 (D.N.H.1940) (principle of Blumenthal not applied when objections to the later discharge were timely raised); *In re Hammond*, 9 F.Supp. 628 (D.Kan. 1934) (withdrawal of objection to denial of discharge because of the result in an earlier case does not preclude the court from denying the discharge sua sponte); and *In re Mendoza*, 16 B.R. 990 (Bankr. S.D.Cal.1982) (while the debtor was not barred from a discharge due to a prior discharge which was later revoked, a debt listed in initial case could not be discharged in the later case).

Having received no further relevant authority from the parties on this point, we are now prepared to state conclusively that we are prepared to follow *Canganelli* as the only contemporaneous decision on point. This result effectively eliminates most of the claims raised in the Motion, except a general reference to 11 U.S.C. § 727(d), and the first two Counts of the Complaint filed in the Proceeding (joining the Motion in seeking to set aside the discharge as entered in error; and invocation of 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure ("FRBP") 9024 to correct a "mistake," respectively) as grounds for relief.

Remaining for disposition are Counts III, IV, and V of the Complaint, which respectively invoke 11 U.S.C. §§ 727(d)(1), (d)(2), and (d)(3), and that aspect of the Motion invoking § 727(d). There is little question that these Code provisions are available as a basis for seeking revocation of the Debtor's bankruptcy discharge as they would be to any interested parties in any case. They provide as follows:

(d) on request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or

(3) the debtor committed an act specified in subsection (a)(6) of this section....

■ Although the Receiver argued that all three of the alternative provisions of § 727(d) were potentially applicable, he devoted almost all of his attention, in his briefing, to § 727(d)(1), and for good reason. Section 727(d)(2) references property *acquired during* the bankruptcy case which the Debtor knowingly and fraudulently failed to report. *See In re Poole*, 177 B.R. 235, 239 (Bankr.E.D.Pa.1995); and 6 COLLIER ON BANKRUPTCY, ¶ 727.15[4], AT 727–71 (15TH ed. rev. 1999). The Complaint asserts only the alleged concealment of assets which the Debtor owned *prior to and during* the bankruptcy case as a violation of § 727(a)(2).

■ Similarly, the Complaint alleges that the Debtor's failure to amend her Schedules as requested by the Trustee constitutes the requisite § 727(a)(6) violation of a court order necessary to bring § 727(d)(3) into play. The oral requests of the Trustee at the creditors' meeting are, however, plainly not "court orders." *Compare Poole, supra,* 177 B.R. at 239. Therefore, these Code sections are not applicable.

■ The law applicable to the remaining § 727(d)(1) claims is set forth in some detail in *Poole,* 177 B.R. at 239, 241, as follows:

Revocation of a discharge is a drastic measure that runs contrary to the Bankruptcy Code's general policy of giving Chapter 7 debtors a "fresh start." *See In re Bowman,* 173 B.R. 922, 924 (9th Cir. BAP 1994); *In re Magnuson,* 113 B.R. 555, 558 (Bankr.D.N.D.1989); *In re Montgomery,* 86 B.R. 948, 956 (Bankr. N.D.Ind.1988); and *In re Tucci,* 81 B.R. 320, 325 (Bankr.E.D.Pa.1988). *See also Kokoszka v. Belford,* 417 U.S. 642, 645–46, 94 S.Ct. 2431, 2433–34, 41 L.Ed.2d 374 (1974). Accordingly, the Plaintiff has the burden of proving all of the requirements for revocation of discharge enumerated in § 727(d)(1). *See In re Jones,* 71 B.R. 682, 684 (S.D.Ill.1987); *In re McElmurry,* 23 B.R. 533, 535 (W.D.Mo.1982); *In re Arianoutsos,* 116

B.R. 116, 118 (Bankr.N.D.Ill.1990); *In re Stein*, 102 B.R. 363, 367 (Bankr. S.D.N.Y.1989); *[In re] Puente*, 49 B.R. [966,] at 968 [(Bankr.W.D.N.Y.1995)]; and *In re Kirschner*, 46 B.R. 583, 586 (Bankr.E.D.N.Y.1985).

The first element which the Plaintiff must prove is that the Debtor has acted in a fraudulent manner. Specifically, the debtor must have committed fraud in the procurement of the discharge which would have been sufficient to prevent the discharge from being granted. *See In re Edmonds*, 924 F.2d 176, 180 (10th Cir.1991); *Jones, supra,* 71 B.R. at 684; *Bowman, supra,* 173 B.R. at 925; *In re Emery*, 170 B.R. 777, 783 (Bankr. E.D.N.Y.1994); *In re Perryman*, 111 B.R. 227, 228 (Bankr.E.D.Ark.1990); and *In re Topper*, 85 B.R. 167, 169–70 (Bankr.S.D.Fla.1988)....

. . .

... even if the Debtor's actions are deemed to be fraudulent, revocation of discharge is only appropriate if the Plaintiff did not know of the alleged fraud until after the discharge was granted. *See, e.g., Edmonds, supra,* 924 F.2d at 180; *In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir.1989); *In re Powell v. First National Bank of Nashville, Arkansas*, 113 B.R. 512, 513 (W.D.Ark.1990); *McElmurry, supra,* 23 B.R. at 535: *Bowman, supra,* 173 B.R. at 925; *Emery, supra,* 170 B.R. at 782–83; *In re Richard*, 165 B.R. 642, 643 (Bankr.W.D.Ark.1994); *In re Ginsberg*, 164 B.R. 870, 876 (Bankr.S.D.N.Y.1994); *In re Ratka*, 133 B.R. 480, 483 (Bankr. N.D.Iowa 1991); *In re Barley*, 130 B.R. 66, 70 (Bankr.N.D.Ind.1991); *In re Meo*, 84 B.R. 24, 29 (Bankr.M.D.Pa.1988); and *In re Couch*, 54 B.R. 682, 684 (Bankr.E.D.Ark.1985). Some courts have further indicated that, when a creditor knows or should know of any possible fraudulent conduct, the creditor has a duty to establish a timely and diligent investigation of the facts to succeed in satisfying this prong. *See, e.g.,*

*Mid–Tech Consulting, Inc. v. Swendra,* 938 F.2d 885, 887–88 (8th Cir.1991); *Arianoutsos, supra,* 116 B.R. at 118–19; and *Stein, supra,* 102 B.R. at 367–68....

▌ The evidence of record which the Receiver pointed to in support of his claims of § 727(d)(1) fraud are the Debtor's failure to disclose that she obtained a discharge in the 95 Case; her failure to file the amendments to her Schedules as requested by the Trustee; and her omission of the aforementioned items of personalty which the Debtor claimed had been removed from her unit, *i.e.,* the televisions, VCRs, air conditions, and coin jar, from her Schedules.

We do not doubt that proof of a tactical decision of the Debtor to conceal the 95 Case discharge and to omit valuable property from her Schedules could constitute grounds for revocation of the Debtor's discharge under § 727(d)(1). *Cf. Casey v. Kasal,* 223 B.R. 879, 884–86 (E.D.Pa.1998); *In re Schachter*, 214 B.R. 767, 773 (Bankr. E.D.Pa.1997); and *In re Katz*, 203 B.R. 227, 232, 236 (Bankr.E.D.Pa.1996), *aff'd,* C.A. No. 97–550 (E.D.Pa. Sept. 10, 1997) (§ 727(a)(4)(A) cases). However, having carefully observed the Debtor's demeanor on the stand, we find that she is totally unsophisticated in bankruptcy matters and was incapable of making a tactical decision involving the rather complex bankruptcy law principles in question. Rather, we find that, not aided to any significant degree by her lay advocate, the Debtor attempted to comply truthfully with the requirements of the Bankruptcy Code to the best of her ability, although she did not totally succeed insofar as accuracy of her submissions was concerned.

We credit the Debtor's testimony that she was unaware of both the § 727(a)(8) requirement and the precise or even approximate dates and dispositions of her several bankruptcy cases. The failure to adhere to the Trustee's requests to file amended Schedules appears to have sprung from procrastination and an inabili-

ty to know how to comply with his requests. Furthermore, in light of his recommendation of a discharge on the date of the meeting, they were technically unnecessary in any event. The property the disclosure of which was omitted is pretty much the typical small fare of an indigent public housing resident. The Trustee has not indicated any desire or intention to liquidate any of this property as possible non-exempt assets. *Cf. In re Blanchard,* 201 B.R. 108, 129–30 (Bankr.E.D.Pa.1996) (availability of property for liquidation by the trustee is a significant consideration in a § 727(a)(4) analysis).

Thus, in *Bowman, supra,* ·the court declined to revoke a debtor's discharge under § 727(d)(1) even though the debtor failed to provide a creditor who had a security interest in certain of his tools with a list of the tools or mention that same were stolen and he had made an insurance claim for same. 173 B.R. at 925. Failure to disclose the nature of a state court action regarding a claim that would have been held nondischargeable was found not to rise to the level of fraud contemplated by 11 U.S.C. § 727(d)(1) in *In re Donald,* 240 B.R. 141 (1st Cir. BAP 1999). Only where it can be shown that there was intentional omission of assets and disclosure of grounds which would have barred discharge was there said to be a justification for revoking a discharge on such grounds in *In re LaPorta,* 26 B.R. 687 (Bankr. N.D.Ill.1982).

█ Assuming *arguendo* that these misstatements and omissions were fraudulent, the Receiver and the Trustee could prevail in Adv. 389 only if it were proven that they had no knowledge of these misstatements and omissions until after the Debtor's discharge was granted. It is difficult to understand why the Receiver, whose counsel certainly knew about the § 727(a)(8) restriction and who was obviously quite aware of the discharge of the Debtor's prior rent obligations as a result of the 95 Case discharge, was not able to uncover the § 727(a)(8) issue that was pre-

sented in this case. Had the Receiver's counsel shared the fact of the 95 Case discharge with the Trustee, the Trustee certainly had the legal knowledge to bring the significance of these circumstances to light. On his part, the Trustee proceeded to immediately recommend the Debtor's discharge despite his not having received the amendments which he requested.

Of the three parties before the court—the Debtor, the Receiver, and the Trustee—, we find that the Debtor had the least facility to uncover the § 727(a)(8) issue. Had she known the law and facts, she could have, and probably would have, proceeded with a Chapter 13 case, *see Day, supra,* 208 B.R. at 363–69, 374–76, rather than improperly invoking Chapter 7 and relying on the failure of the seemingly vigilant CHA/Receiver to overlook her violation of § 727(a)(8). At the very least, the Receiver had sufficient facts at his disposal to trigger the applicable duty to investigate the complete relevant circumstances. *See Mid–Tech Consulting, supra,* 938 F.2d at 887–88; *In re Vereen,* 219 B.R. 691, 694 (Bankr.D.S.C.1997); and *In re Kaliana,* 202 B.R. 600, 605–06 (Bankr. N.D.Ill.1996).

We therefore conclude that the Receiver and the Trustee cannot successfully invoke § 727(d)(1), or any other provision of the Code, to attack the Debtor's discharge. The only issues remaining—and they remain the province of the Court to decide at this juncture—are (1) whether this discharge should have precluded the Debtor's eviction from public housing on the basis of the Debtor's pre-petition, discharged rent obligation; (2) whether she remained sufficiently current on her post-petition rent to justify retention of her unit; and (3) what precise remedies are in order. The Court has specifically requested that we provide our findings and conclusions on the first of these issues, although we are not prepared to address the latter two.

█ This court, in *e.g., Day, supra,* 208 B.R. at 363–69, and many other courts

following the seminal case of *In re Gibbs*, 9 B.R. 758, *supplemented*, 12 B.R. 737 (Bankr.D.Conn.1981), *aff'd in relevant part & remanded in part sub nom. Gibbs v. Housing Authority of City of New Haven*, 76 B.R. 257 (D.Conn.1983), have held that 11 U.S.C. § 525(a) protects a public housing tenant from eviction on the bases of an unpaid rental obligation which has been discharged in bankruptcy. The linchpin of this conclusion is the observation, undisputed in any authority known to us at the time, that a public housing tenancy includes both a right to lease a residence *and* a right to be charged the rent reductions established for public housing tenants. A public housing tenant's right is not, therefore, comparable to a garden-variety government contract, which may not be protected by § 525(a). *Id.* at 367.

In *Bacon, supra,* Judge Sigmund, while agreeing with the *Day* conclusions on all or most of the points articulated in the only other known decisions involving Pennsylvania public housing tenants which reached the same result as *Bacon, In re Collins*, 199 B.R. 561 (Bankr.W.D.Pa. 1996); and *In re James*, 198 B.R. 885 (Bankr.W.D.Pa.1996), disputed this linchpin principle of *Day.* For example, *Bacon*, 212 B.R. at 68, does not dispute the principle that a public housing tenant's failure to assume the lease does not effect a termination of that lease. *See also In re Sheard*, 1999 WL 454260, at *3 (Bankr. E.D.Pa. June 24, 1999) (SIGMUND, J.). *Bacon* apparently reaches its result by concluding that a public housing tenant's rights can be bifurcated into a creditor portion and a grantor portion. 212 B.R. at 75–76. *Bacon* holds that the grantor portion is protected by § 525(a), but that the creditor portion is not. *Id.*

*Bacon* is the only known case which purports to bifurcate this governmental benefit, or any other governmental benefit within the scope of § 525(a). This effort was not attempted in either the *Collins* or *James* cases, which were addressed in *Day* and *Bacon.* We believe that there is no justification for doing so. The governmental benefit at issue, like any other governmental benefit, should be considered unitarily in all of its aspects.

The aspect of the *Day* result most detrimental to public housing tenants is not its unprecedented theoretical approach of attempt to subdividing the public housing benefit at issue into two aspects. Rather, it is the practical consequences of doing so. *Bacon's* acknowledgment of what it terms the grantor aspect of the public housing benefit apparently, per that decision, allows the now-ousted public tenant the right to reapply for public housing. However, this is a process which will result in the tenant's immediate displacement and then years of waiting on a list to obtain re-entry into public housing. The *Bacon* result is, for all practical purposes and contrary to its own theoretical basis, effectively a holding that public housing agencies are exempt from § 525(a).

On the practical side, we should note our observation that the Philadelphia Housing Authority and, it is believed, all other public housing agencies in this jurisdiction, have not sought to implement *Bacon* on a regular basis. Therefore, *Day* remains the de facto consistent law of the district in public housing matters, as it has always been. In this regard, we note that *Day* merely fleshed out the prior decisions of this court. The groundwork for the decision that a Chapter 7 discharge prevented an eviction for the discharged rent was laid ten years before in *In re Sudler*, 71 B.R. 780, 786–87 (Bankr.E.D.Pa.1987), which in turn followed decisions of then Chief Judge Twardowski in, *e.g., In re Amhurst*, Bankr.No. 84–02064T (Bankr. E.D.Pa. March 8, 1985) (expressly adopting "the reasoning and holding" of *Gibbs, supra*). *Accord,* 4 COLLIER, *supra,* ¶ 525.02[2], at 525–9 (stating, as black-letter law, "debtors are protected from denial of continued occupancy in public housing based upon dischargeable debts for past rent, ...."). Since *Bacon* the issue therefore has not arisen regularly in this court

and tends to arise only in unusual factual situations, such as the instant case, when a local public housing authority attempts, by invocation of *Bacon*, to justify actions which it takes in error of its normal practices.

In any event, the only matter before us at this juncture is whether the Debtor is entitled to retain her Chapter 7 discharge entered on this case. For the reasons stated, we hold that she is. As far as Adv. 331 goes, the Court's refusal to allow the Debtor to proceed with that action in this court requires us to dismiss that proceeding without prejudice.

## D. CONCLUSION

An order consistent with the result reached herein will be entered.