In re Olga VALENTIN, Debtor.

No. 03–25290T.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 10, 2004.

Valerie West, Central PA Legal Services, Reading, PA, for Debtor.

James M. Smith, Reading, PA, for Reading Housing Authority.

Robert H. Holber, Holber, Stanwood & Guilfoil, Media, PA, for Trustee.

Dave Adams, Office of the U.S. Trustee, Philadelphia, PA, for U.S. Trustee.

### *MEMORANDUM OPINION* [1]

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Reading Housing Authority ("RHA") filed a motion for relief from the automatic stay ("the Motion") seeking to enforce its rights and remedies under a lease with the debtor, Olga Valentin ("Debtor"), for a public housing unit in Reading, Pennsylvania. While RHA alleged both pre and

---

1. This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law mandated by Fed. R. Bankr.P. 7052 and 9014(c).

post-petition payment defaults as the basis for seeking relief from the stay, it was admittedly only the pre-petition default for which RHA seeks relief to allow it to continue with its eviction of Debtor. In response, Debtor contends, inter alia, that 11 U.S.C. § 525(a), which protects a debtor against discrimination by a governmental unit, prohibits RHA from obtaining the relief it seeks. The parties have submitted their post-hearing briefs and the matter is ready for decision.

## FACTS

The facts are relatively straightforward and uncontested. RHA is a public housing agency that owns and operates a public housing complex in Reading, Pennsylvania. Debtor heretofore entered into a written lease with RHA ("the Lease") for an apartment within the housing complex ("the Premises"), wherein Debtor agreed to pay a certain portion of the monthly rent. The remaining amount of the rent is subsidized.[2]

Following Debtor's default on rent payments, RHA commenced an action in June of 2003 to recover the unpaid rent and possession of the Premises. Judgment was entered in favor of RHA in the amount of $723.89 after a hearing held on July 1, 2003. RHA was also awarded possession of the Premises in the event that Debtor failed to satisfy the judgment by the time of the scheduled eviction.

2. Prior to July 1, 2003, Debtor was required to pay $97 per month for her portion of the rent. Following July 1, 2003, Debtor was responsible to pay $144 per month. Debtor's portion of the rent was further adjusted on October 1, 2003, to $25 per month. In addition to the rent, Debtor was required to pay $18.50 per month for air conditioning and the washer/dryer unit.

3. Before determining the applicability of section 525(a), a determination must be made regarding whether the lease was terminated prior to Debtor's bankruptcy filing. See In re

Thereafter, on July 7, 2003, Debtor entered into a payment arrangement with RHA, wherein Debtor agreed to make installment payments to payoff the judgment. However, Debtor failed to make some or all of the installment payments. Consequently, on or about September 23, 2003, RHA obtained an Order for Possession for the Premises. Before Debtor's eviction could be accomplished, Debtor filed a Chapter 7 petition on October 2, 2003.

Debtor continued to make her rent payments to RHA after she filed her bankruptcy petition. Only the judgment that RHA obtained pre-petition remains unpaid. RHA filed the instant Motion after the Chapter 7 Trustee failed to assume or reject the Lease within sixty days of Debtor's bankruptcy filing. Debtor filed a timely response in opposition to the Motion.

## DISCUSSION

The issue before this Court is whether 11 U.S.C. § 525(a) prohibits a public housing landlord from obtaining relief from the automatic stay to evict a tenant whose sole default is the non-payment of pre-petition rent.[3]

### I. Lease Rejection

Traditionally, landlords file "motions for stay relief" after a lease has been deemed

Bacon, 212 B.R. 66, 69 (Bankr.E.D.Pa.1997). If the lease was terminated prior to the debtor's bankruptcy filing, then the lease does not become part of the bankruptcy estate and, therefore, does not receive protections afforded in bankruptcy. "Bankruptcy cannot breathe life into a terminated lease." Bacon, 212 B.R. at 70. Consequently, section 525(a) will not apply in such an instance.

"Termination" is a state law concept, see Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); Robinson v. Chicago Housing Auth., 54 F.3d 316, 320 n. 1

rejected since, upon rejection, a lease is abandoned to the debtor and no longer constitutes property of the bankruptcy estate. *See Stoltz v. Brattleboro Housing Auth. (In re Stoltz),* 315 F.3d 80, 86 (2nd Cir.2002); *In re Bacon,* 212 B.R. 66, 68 (Bankr.E.D.Pa.1997); *In re Day,* 208 B.R. 358, 365 (Bankr.E.D.Pa.1997); *In re Rosemond,* 105 B.R. 8, 9–10 (Bankr.W.D.Pa. 1989).

■ Here, we conclude as a matter of law that the Lease was rejected because the Trustee did not elect to assume or reject it within sixty days following the bankruptcy filing. *See* 11 U.S.C. § 365(d)(1). This is not surprising, for as one court noted, "[i]n virtually every Chapter 7 no-asset case the trustee realizes no benefit from assuming the debtor's residential lease, and thus in virtually every Chapter 7 no-asset case, the residential lease is deemed rejected ..." *In re Sheard,* No. 98–19627DWS, 1999 WL 454260, at *3, 1999 Bankr.LEXIS 811, at *10 (Bankr.E.D.Pa.1999); *see also Day,* 208 B.R. at 365 (noting that the vast majority of public housing tenant bankruptcies are no asset cases in which the trustee

will have no financial or other interest in a debtor's residential lease and, thus, the lease is subject to rejection). By virtue of the rejection, RHA sought to terminate the Lease and recover possession of the Premises based upon Debtor's default in the payment of pre-petition rent.[4]

Debtor, like many similar public housing tenants seeking to avoid eviction, alleges that section 525(a) of the Code bars RHA from prevailing on their "stay relief" motion. This Court must determine the extent, if any, to which the Debtor is entitled to protection under section 525(a) of the Code. We thus join the list of other Courts who have pondered this weighty issue. Indeed, as the Second Circuit Court of Appeals commented, "[d]espite more than twenty years of judicial consideration ... the scope of [s]ection 525(a)'s protection in the context of public housing is still unsettled." *Stoltz,* 315 F.3d at 88.

## II. Applicability of the Anti-discrimination Provision

■ Section 525(a), otherwise known as the anti-discrimination provision, provides, in relevant part, that:

(7th Cir.1995); *Bacon,* 212 B.R. at 69, and under Pennsylvania law, a lease is not terminated until the eviction of the lessee is completed. *See Bacon,* 212 B.R. at 70; *Sudler v. Chester Housing Auth. (In re Sudler),* 71 B.R. 780, 785 (Bankr.E.D.Pa.1987). Despite obtaining the Order of Possession, RHA was unable to complete the eviction prior to Debtor's bankruptcy filing. Accordingly, the Lease was not terminated prior to Debtor's bankruptcy filing and section 525(a) may be applicable. *See e.g., Bacon,* 212 B.R. at 70.

It is important to note that "rejection" of a lease is not synonymous with "termination" or a lease. *See Stoltz,* 315 F.3d at 86 n. 1; *Bacon,* 212 B.R. at 69. "Rejection" is a bankruptcy concept that determines whether the estate will administer a lease as an asset. *See Bacon,* 212 B.R. at 69. Rejection has no impact on a contract's existence and, as a result, a contract is not deemed to be terminated by virtue of a rejection. *Id.* at 69. "Termination" is a concept that determines

the viability of a contract and is a matter of applicable state law. *Id.* at 69. Thus, when a lease is rejected, it is still a viable contract. *See Day,* 208 B.R. at 365. Rejection, whether by motion or operation of law, simply permits a landlord to seek relief from the stay in order to be able to pursue state law remedies to terminate a lease for any breach thereof. *See In re Sheard,* No. 98–19627DWS, 1999 WL 454260, at *3, 1999 Bankr.LEXIS 811, at *10 (Bankr.E.D.Pa.1999).

4. Prior to the hearing, RHA withdrew the Motion to the extent that it was based on any alleged post-petition breach of the Lease. Thus, RHA solely relies upon Debtor's pre-petition breach of the Lease in failing to pay the pre-petition rent. Further, RHA acknowledged that, assuming the pre-petition rent is ultimately discharged, it will of course cease all collection efforts.

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such grant against ... a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

This provision protects debtors against discrimination regarding the receipt of public benefits. That is, section 525(a) helps to ensure the "fresh start" policy of the Code by prohibiting governmental entities from refusing to deal with or denying a certain property interest to a debtor due to his or her bankruptcy filing. *See Bacon,* 212 B.R. at 74–75.

 We begin by noting that the Debtor must establish three requirements in order for section 525(a) to apply. First, the prohibitive conduct must have been performed by a "governmental unit".[5]

Second, the governmental unit must have denied, revoked, suspended or refused to renew a license, permit, charter, franchise or other similar grant to the debtor. Third, the action must have been taken solely because the debtor filed for bankruptcy, was insolvent or failed to pay a debt that is subject to discharge in bankruptcy.[6]

## A. Governmental Unit:

 We find that, for purposes of section 525(a), RHA is a governmental unit which owns and operates the complex in which the Premises is located. *See Stoltz,* 315 F.3d at 88.[7] However, the second and third requirements of section 525(a) present a little more difficulty in their application to this case. Indeed, much of the controversy surrounding section 525(a) in the context of public housing has centered on the interpretation of the terms "other similar grant" (requirement 2) and "solely because" (requirement 3). *See Stoltz,* 315 F.3d at 88.

## B. Requirement that Eviction is Being Sought "Solely Because" of Debtor's Failure to Pay Dischargeable Debt:

Courts have struggled with the question of whether eviction is being sought by a public housing authority "solely because" a debtor failed to pay a dischargeable debt

---

**5.** A governmental unit is defined to include the following: "[the] United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27).

**6.** Pre-petition rent is dischargeable in bankruptcy. *See Bacon,* 212 B.R. at 71; *The*

*Housing Auth. of the City of Erie v. Szymecki (In re Szymecki),* 87 B.R. 14, 15 (Bankr. W.D.Pa.1988).

**7.** This matter does not involve Section 8 housing in which the government subsidizes leases for privately owned housing units. In such a case, the entity providing housing would not be considered a governmental unit and section 525(a) would not be applicable. *See e.g., Spruce Ltd. Partnership v. Lutz (In re Lutz),* 82 B.R. 699, 703 (Bankr.M.D.Pa.1988).

(i.e., pre-petition rent).[8] Assuming that the only basis of default is the non payment of pre-petition rent (such as is the case here), some courts have held that an eviction would not be "solely because" a debtor failed to pay a pre-petition debt because the public housing authority sought to recover the premises rather than collect the pre-petition rent. *See e.g., Robinson v. Chicago Housing Auth. (In re Robinson)*, 169 B.R. 171, 176 (N.D.Ill. 1994), *aff'd.* 54 F.3d 316 (7th Cir.1995) *Housing Auth. of the City of Pittsburgh v. Collins (In re Collins)*, 199 B.R. 561, 566 (Bankr.W.D.Pa.1996); *Housing Auth. of the City of Pittsburgh v. James (In re James)*, 198 B.R. 885, 889 (Bankr.W.D.Pa. 1996). However, other courts have found such a distinction to be illusory and have held that a debtor was being evicted "solely because" of the failure to pay pre-petition rent since such action would not have occurred but for the failure to pay rent.

---

**8.** Historically, it appears that much of the dispute over the applicability of section 525(a) to public housing related to whether the debtor was being evicted "solely because" of the failure to pay a dischargeable debt. Some courts have broadly interpreted the term "solely because", requiring that the failure to pay a debt play a significant role in the government's action. *See e.g., Curry v. Metropolitan Dade County (In re Curry)*, 148 B.R. 966, 971–972 (S.D.Fl.1992); *Szymecki*, 87 B.R. at 15; *Sudler*, 71 B.R. at 786–87; *see also Pennsylvania Pub. Util. Comm'n. v. Metro Transp. Co. (In re Metro Transp. Co.)*, 64 B.R. 968, 975 (Bankr.E.D.Pa.1986). In other words, if the failure to pay had any part to do with the government's decision to evict, it was deemed to be the sole cause. Courts following this approach find that section 525(a) protects the debtor from eviction. Other courts have applied a more narrow interpretation finding that section 525(a) is not implicated where the government had reasons other than those enumerated therein to support its decision to seek eviction. *See e.g., Robinson v. Chicago Housing Auth. (In re Robinson)*, 169 B.R. 171, 176 (N.D.Ill.1994), *aff'd* 54 F.3d 316 (7th Cir.

*See e.g., Stoltz*, 315 F.3d at 91; *Bacon*, 212 B.R. at 75; *Day*, 208 B.R. at 364.

The Supreme Court in *Federal Communications Comm'n. v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003), recently shed some light on the meaning of the term "solely because" as used in section 525(a), albeit outside of the context of public housing, which will hopefully provide a basis for achieving some consistency in future court decisions. In *NextWave*, the Supreme Court found that the debtor's failure to pay its debt (which was dischargeable) to the FCC was the proximate cause of the cancellation the debtor's licenses for broadband personal communications services. *Id.* at 301–302, 123 S.Ct. 832. As a result, the Supreme Court held that the FCC was prohibited from revoking the licenses pursuant to section 525(a). *Id.* The Supreme Court explained that:

[w]hen a statute refers to the failure to pay a debt as the sole cause of cancella-

---

1995); *Housing Auth. of the City of Pittsburgh v. Collins (In re Collins)*, 199 B.R. 561, 566–567 (Bankr.W.D.Pa.1996); *Housing Auth. of the City of Pittsburgh v. James (In re James)*, 198 B.R. 885, 889 (Bankr.W.D.Pa.1996); *cf., Exquisito Servs., Inc. v. United States of America (In re Exquisito Servs., Inc.)*, 823 F.2d 151, 153–155 (5th Cir.1987). That is, if the government had reasons to evict other than a debtor's failure to pay a dischargeable debt, then its action would not be "solely because" of the failure to pay the debt. This line of reasoning is now certainly called into question by the Supreme Court's decision in *Federal Communications Comm'n. v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003). *See* discussion, *infra*.

However, some courts, realizing the difficulties of interpreting the term "solely because" and the fractured decisions which have resulted, began to focus their attention on determining the nature of the grant instead. *See e.g., Stoltz*, 315 F.3d at 89–90; *Bacon*, 212 B.R. at 75. Indeed, such focus may take on added importance in light of the *NextWave* decision. *See* discussion, *infra*.

tion ("solely because"), it cannot reasonably be understood to include, among the other causes whose presence can preclude the application of the prohibition, the governmental unit's motive in effecting the cancellation.

*Id.* at 301, 123 S.Ct. 832. Thus, in order for a governmental unit's action to be "solely because" of the failure to pay a dischargeable debt, the failure to pay must alone be the proximate cause of the cancellation, irrespective of motive. *Id.* at 302, 123 S.Ct. 832.[9]

■ In light of the guidance provided by *NextWave*, we conclude that Debtor's failure to pay the pre-petition rent was the proximate cause of RHA's decision to evict,[10] since we find as a fact that RHA would not have sought to evict Debtor had Debtor not failed to pay the pre-petition rent. Indeed, RHA readily admits that it seeks to evict Debtor based upon her failure to pay pre-petition rent.[11] Thus, RHA is seeking to evict Debtor "solely because" Debtor has not paid a dischargeable debt. Consequently, the crux of this matter centers on whether public housing is a protected grant within the meaning of section 525(a).

## C. "Other Similar Grant":

■ Courts have unanimously concluded or assumed that public housing is a protected grant under section 525(a). *See Bacon,* 212 B.R. at 70. Courts have differed, however, in their interpretation of exactly which aspects of public housing constitute an "other similar grant" under section 525(a). How the public housing grant is ultimately defined will affect the scope of section 525(a)'s protection.

Some courts have held that the term "other similar grant" encompasses public housing leases. *See e.g., Stoltz,* 315 F.3d at 90–91; *The Housing Auth. of the City of Erie v. Szymecki (In re Szymecki),* 87 B.R. 14, 16 (Bankr.W.D.Pa.1988). Another court has held that the government rent subsidy was the protected grant. *See e.g., Curry v. Metropolitan Dade County (In re Curry),* 148 B.R. 966, 972 (S.D.Fla.1992). A former bankruptcy judge of this District has held that both the lease and the rent subsidy were protected grants. *See e.g., Day,* 208 B.R. at 367; *see also Johnson v. Chester Housing Auth. (In re Johnson),* 250 B.R. 521, 530 (Bankr.E.D.Pa.2000). In those instances in which the courts define the protected grant as the lease and/or the rent subsidy, section 525(a) will generally shield a debtor from eviction, assuming

---

9. To put this in the context of public housing, if the housing authority proffered several compelling reasons to evict a debtor, in addition to the failure to pay pre-petition rent, these reasons would be of no import so long as it is established that the event that caused the housing authority to evict the debtor was the failure to pay the pre-petition rent. In other words, if the housing authority would not have sought to evict but for the failure to pay pre-petition rent, then the action taken by the housing authority is "solely because" of the failure to pay a dischargeable debt.

10. Notably, had Debtor's pre-petition breach of the Lease been the result of a failure to comply with a duty other than the duty to pay rent, RHA may of had a permissible basis to

seek eviction. *See e.g., Smith v. St. Louis Housing Auth. (In re Smith),* 259 B.R. 901, 906 (8th Cir. BAP 2001) (decision to terminate the debtor's rent subsidy was based on the debtor's fraud). However, such a factual scenario is not before this Court.

11. Other than the failure to pay the judgment, RHA does not offer any other reason or grounds for evicting Debtor. Yet, even if RHA asserted that it was only seeking to terminate its contractual relationship with Debtor based upon the Trustee's rejection, the inescapable conclusion is that the failure to pay pre-petition rent is the reason for the termination. *See e.g., Stoltz,* 315 F.3d at 92; *Bacon,* 212 B.R. at 76 n. 18; *Day,* 208 B.R. at 364.

that the eviction was "solely because" of one of the enumerated items in said provision. *See Stoltz,* 315 F.3d at 90–91; *Johnson,* 250 B.R. at 530; *Curry,* 148 B.R. at 972; *Day,* 208 B.R. at 367; *Szymecki,* 87 B.R. at 16; *but see Collins,* 199 B.R. at 566–67 (while appearing to recognize that a rent subsidy, apart from the lease, is a protected grant, section 525[a] was still inapplicable to protect the debtor from being evicted because the housing authority was not seeking to evict the debtor solely because the debtor failed to pay a pre-petition default); *James,* 198 B.R. at 888–889 (while implicitly recognizing the rent subsidy was a protected grant, section 525[a] was still inapplicable to protect the debtor from being evicted because the housing authority was not seeking to evict the debtor solely because the debtor failed to pay a dischargeable debt).

 However, other courts have limited the section 525(a) protected grant in the public housing context to the future right to participate in public housing. *See Bacon,* 212 B.R. at 75; *see also In re Hobbs,* 221 B.R. 892, 896 (Bankr.M.D.Fla. 1997). Thus, those courts have held that the protected grant does not include the lease or the rent subsidy. *See Bacon,* 212 B.R. at 75 n. 17. For instance, Judge Diane Weiss Sigmund[12], of this District, distinguished the public housing authority's role as a creditor from its role as a grantor of public housing benefits in determining the applicability of section 525(a).[13] *Id.* at 75. Specifically, Judge Sigmund held that the public housing authority was

unconstrained in its role as a creditor to evict a debtor so long as the debtor is not being deprived of his or her right to any future participation in the public housing program (i.e., the protected grant).[14] *Id.* As stated by Judge Sigmund:

> ...the issue in § 525(a) is not collection of discharged debt, ably dealt with in other sections, but refusal to deal with the debtor because of his bankruptcy and its consequences. While there is no proscription on a private party's refusal to deal, there is such a prohibition when the party is a governmental entity and the dealings are in the nature of licenses, permits, charters, franchises or similar grants for due to the exclusivity of those benefits, their absence will impair the debtor's fresh start.

*Id.* at 74. Under this approach, section 525(a) protects a debtor only if the debtor is denied the right to participate in public housing upon *re*-application. Likewise, the bankruptcy court in *Hobbs* stated:

> ...the protections offered by Section 525(a) are not implicated as long as the eviction process does not deprive the debtor of the right to participate in the public housing program in the future. If the public housing authority sought to preclude the debtor from participating in the public housing program because the debtor had filed a bankruptcy petition, then Section 525(a) would be implicated. However, if the public housing authority is merely enforcing its lease as it would against any other tenant, Sec-

---

**12.** Now Chief Judge of this Court.

**13.** The reason for such analysis is that a public housing landlord, as a creditor, should be treated no differently than any other creditor under the Code. *See Bacon,* 212 B.R. at 75.

**14.** The housing authority's role as a grantor is to provide the right to participate in public housing and within this duty, the housing

authority will be constrained by section 525(a). *See Bacon,* 212 B.R. at 75. However, so long as the housing authority proceeded in rem against a premises and did not seek to collect dischargeable debt, its activities would not be proscribed by section 525(a) since such activity would not be impeding upon its grantor role. *Id.*

tion 525(a) does not require the public housing authority to forestall eviction proceedings merely because a bankruptcy action is filed by the tenant, assuming the authority obtains permission to modify the automatic stay.

In permitting the public housing authority to modify the automatic stay to continue an eviction action, the debtor will be removed from the leased premises while she awaits assignment of a new unit. The amount of time the debtor goes without public housing will depend on the demand for such public housing and the availability of these units. In some locales, the wait may be long, and the result of this ruling harsh. However, if Section 525(a) prevented a public housing authority from evicting a debtor whom failed to pay prepetition rent then the "fresh start" which Section 525(a) was designed to provide debtors would be turned into an impermissible "head start."

*Hobbs,* 221 B.R. at 895–96 (citations omitted). *See also Housing Auth. of the City of Decatur v. Caldwell (In re Caldwell),* 174 B.R. 650, 654 (Bankr.N.D.Ga.1994)(public housing tenants do not lose their apartments because they filed bankruptcy, which is what section 525(a) was intended to prevent, but rather, they lose their apartments because federal regulations and the public housing leases demand that rent be paid to maintain possession of the premises).

 Having reviewed the authorities cited above in conjunction with the briefs filed by the parties and the record before us, we agree with the reasoning expressed by our colleague, Chief Judge Diane Weiss Sigmund in *Bacon,* 212 B.R. at 74–6, that the grant protected by section 525(a) in the public housing context is the future right to participate in the public housing program. As Judge Sigmund recognized, section 525(a) does not impact the public housing authority's right to enforce its *in rem* rights to the premises.[15] Hence, section 525(a) does not prevent RHA from obtaining relief from the automatic stay to continue prosecution of an eviction action against Debtor based upon Debtor's failure to pay pre-petition rent, so long as RHA does not attempt to preclude Debtor from future participation in public housing programs for which she is otherwise eligible. *Bacon,* 212 B.R. at 74.[16] Accordingly, we shall grant the motion filed by RHA seeking relief from the automatic stay to enable RHA to continue with its state court eviction proceeding.[17]

An appropriate Order follows.

---

**15.** We find Judge Sigmund's analysis consistent with the Third Circuit Court of Appeals' narrow construction of section 525(a), *see Watts v. Pennsylvania Housing Finance Co. (In re Watts),* 876 F.2d 1090 (3rd Cir.1989); *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81 (3rd Cir.1988). We will not presume that the Third Circuit Court of Appeals would adopt the reasoning of the majority in *Stoltz,* 315 F.3d at 87–95, particularly in light of the compelling dissent therein of Chief Judge John M. Walker, Jr., who reaches a result consistent with *Bacon,* 212 B.R. at 74–76.

**16.** We agree with Judge Sigmund that, "...as the Court noted in *Watts,* 'the fresh start poli-

cy does not require the State to insulate a debtor from any and all adverse consequences of a bankruptcy filing.'" *Bacon,* 212 B.R. at 76 (*quoting Watts,* 876 F.2d at 1094).

**17.** We note that we agree with the view expressed by Judge Sigmund that

[i]n holding that § 525(a) protects a debtor's right to public housing, presumably were there no waiting list for a unit, there would be no reason to evict the debtor. However, to the extent that there are equally eligible financially disadvantaged persons waiting for housing, debtor's fresh start is not intended to be a head start and she will have to take her place in line to gain access to a unit.

### ORDER

AND NOW, this 10th day of May, 2004, upon consideration of the Reading Housing Authority's motion for relief from the automatic stay ("Motion") and its memorandum of law in support of the Motion; the response of Olga Valentin and her memorandum of law in opposition to the Motion; and after a hearing held on the matter, and for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED** and **DECREED** that the Motion is hereby **GRANTED.**

*Bacon,* 212 B.R. at 76 n. 19. Therefore, if no waiting list exists for the subject premises, RHA shall not proceed with the state court eviction, but instead, shall permit Debtor and her family to continue residing in the premises while her new application for housing is processed.